GEORGES DUTTWEILER and Another, Appellants, *v.* ARTHUR H. JACOBS, Respondent.

First Department, April 13, 1928.

Contracts — breach — action to recover damages — defense of impossibility of performance — plaintiffs, residents of Switzerland, were engaged to act as tutors for defendant's children — impossibility of performance is based on fact that plaintiffs could not remain in this country during period of contract — contract does not stipulate place of performance — question of fact as to whether contract was impossible of performance — error to dismiss complaint.

In an action for breach of contract it appears that the defendant engaged the plaintiffs, residents of Switzerland, to act for a term of five years as tutors for defendant's children. The defendant pleaded that the contract was impossible of performance since plaintiffs would not be permitted to remain in the United States for a longer period than nine months.

In view of the evidence to the effect that the defendant planned to spend only a part of his time in the United States and the remainder in Europe, and in view also of the fact that the contract is silent as to the place of performance, an issue of fact was presented as to whether or not the contract was impossible of performance in accordance with its terms, and, therefore, it was error for the court to dismiss the complaint at the close of the plaintiffs' case.

APPEAL by the plaintiffs from judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 10th day of June, 1927.

*Walter H. Merritt* of counsel [*Henry Escher* with him on the brief], for the appellants.

*Albert A. Lustig* of counsel [*Marks & Marks*, attorneys], for the respondent.

FINCH, J. The plaintiffs sued to recover damages for the repudiation by the defendant of a written contract entered into between the parties. The complaint was dismissed at the close of the plaintiffs' case, the court holding that the contract was impossible of performance upon the part of the plaintiffs. It is

necessary to reverse the judgment, as upon this record there is made out a *prima facie* case of breach of contract, but impossibility of performance does not appear.

The plaintiffs are residents and citizens of Switzerland. The parties to this action on August 24, 1926, in Switzerland, entered into a contract, reading as follows:

" Contract between Georges Duttweiler and Arthur H. Jacobs, Dated August 24, 1926.

" CONVENTION (Contract)

" Between Mr. Arthur H. Jacobs of New York, of one part and Mr. Duttweiler of Lausanne, of the other part.

" This agreement is valid for five years commencing October 1st, 1926.

" Mr. and Mrs. Jacobs engage Mr. and Mrs. Duttweiler as companions and private teachers of their children Jack and Madelyn Brown.

" Madame Duttweiler agrees to be particularly responsible for Madelyn. She will accompany her to school also her dancing and music lessons and generally be her companion in and out of doors. She will also be responsible for the proper upkeep of her wardrobe and all physical cares which she may require.

" Mr. Duttweiler shall give to Jack and Madelyn French and German lessons and assist in all other lessons they may require, he shall also be companion to Jack in all athletic games and amusements.

" Mr. and Mrs. Duttweiler shall accompany Jack and Madelyn in all their voyages, changes of habitation or holidays, at the expenses of Mr. Jacobs.

" Mr. and Mrs. Jacobs agree to provide living quarters and meals at their hotel in New York, for Mr. and Mrs. Duttweiler.

" Mr. Duttweiler shall be free to dispose of his time between 9 o'clock A. M. and 5 o'clock P. M. (Saturday, Sunday and holidays or days while traveling excepted.)

" Mr. and Mrs. Jacobs will do everything possible to procure lessons for Mr. Duttweiler during the time at his disposal. They agree to pay Mr. and Mrs. Duttweiler for rendering such services satisfactorily a salary of One Hundred Dollars a month, payable every three months.

" LAUSANNE *August* 24, 1926.          " ARTHUR H. JACOBS
                                        " G. DUTTWEILER."

The plaintiffs, being husband and wife, subsequently joined the defendant, his wife and two children in Paris, and on September 16, 1926, all sailed for New York. Before the vessel arrived at

New York, the defendant stated to the plaintiff Georges Duttweiler that he would not employ the plaintiffs in accordance with the terms of the written contract. The defendant was willing to employ the plaintiff Georges Duttweiler alone, provided that he would live outside the hotel in which the defendant lived. The plaintiff Georges Duttweiler declined to accept employment on these terms, but insisted on the contract being performed and the defendant refused. The defendant, therefore, clearly breached the contract. The plaintiffs were detained at Ellis Island by the immigration authorities, but secured admission to the United States on a permit for six months, which later was extended for a further period of three months. It is the contention of the defendant that if the defendant and his family remained in the United States for a period beyond the nine months' limitation of plaintiffs' stay, the plaintiffs would then be unable to perform the services required under the agreement and that the contract would in that event become impossible of performance by the plaintiffs, and the defendant would thereupon be excused and the contract be at an end. In thus contending the defendant overlooks an important principle in the construction of contracts, namely, that a contract must be construed in the light of the circumstances surrounding the same when it was made and the apparent purpose which the parties were seeking to accomplish. (*Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519; *Mecca Realty Co.* v. *Kellogg Toasted Corn F. Co.*, 166 App. Div. 74; affd., 221 N. Y. 724; *Gillet* v. *Bank of America*, 160 id. 549.) In Williston on Contracts (Vol. 2, § 629) it is said: " Surrounding circumstances may always be shown. If the local standard is that by which the meaning of a contract is to be decided, it follows that the local meaning of the language of the writing may be proved to establish the correct application of the language to the things described. To do this involves proof of the time and place of the contract, and of any facts then and there existing which may throw light not on the intention of the parties, but on the local meaning of the writing. Therefore to put the court in the same position as the parties the circumstances under which the contract was made should always be admissible so far as they tend to show the local meaning of the language of the contract, whether or not that language is ambiguous if judged by the normal or ordinary meaning of the words; and the prevailing rule permits this. The court will put itself in the position of the parties. If the normal standard were the test, the rule would properly be as it is still not infrequently stated that only where the language is ambiguous on the face of the writing, can the circumstances under which the contract was made be admitted. * * * The correct

principle has been well summarized in a recent decision (*Eustis Mining Co.* v. *Beer*, 239 Fed. 976, 985), where Judge LEARNED HAND said: ' All the attendant facts constituting the setting of a contract are admissible, so long as they are helpful; the extent of their assistance depends upon the different meanings which the language itself will let in. Hence we may say, truly perhaps, that, if the language is not ambiguous, no evidence is admissible, meaning no more than that it could not control the sense, if we did let it in.' " Also in *Nash* v. *Towne* (5 Wall. 689, 699) it is held that in the construction of written contracts the court is entitled to place itself in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and to judge of the meaning of the words and of the correct application of the language to the things described.

At the time the contract was made the record shows that the appellants were residents and citizens of Switzerland, running a private school for boys and girls. The defendant, respondent, and his family were traveling in Europe when they met the appellants. Thereafter the contract in suit was drawn up in Switzerland by a hotel manager and executed by both parties. The plaintiff further testified that at the time the contract was made it was the agreement that the contract should be performed by the appellants first visiting America for six months, then traveling in Europe for six months, then returning to America for six months and then returning to Europe for six months, and so on throughout the term of the contract. This contention of the plaintiffs is borne out by the testimony of the defendant before the immigration authorities at Ellis Island at the inquiry held to determine whether the plaintiffs should be admitted into the United States. The defendant, respondent, testified in part as follows: " Q. Why did you bring Mr. Duttweiler for six or nine months? A. Because I plan to have the children return to continue their schooling in Switzerland. * * * Q. You promise to employ Mr. Duttweiler in your family as a teacher? A. Yes. Q. How long are they to stay here? A. Six to nine months."

If we consider also this contract from the viewpoint that it is silent as to where the contract was to be performed or from the viewpoint of an ambiguity in the terms of the contract as written, we reach the same conclusion, namely, that there was at least an issue presented for the jury. The contract itself is silent as to where it was to be performed. Express provision is made for voyages and changes of habitation, as distinct from mere holiday visits. Considering this clause with the subsequent clause, it would seem that the contract provided that while the defendant

was in New York the plaintiffs should be provided for by the defendant at the hotel in New York at which he lived. When we consider, therefore, the circumstances under which the contract was executed, the fact that the contract was silent as to where it was to be performed and that it expressly referred to voyages and changes of habitation, as distinct from mere holiday visits, at the least an issue of fact was presented for the jury as to whether or not the defendant would have the right to demand performance by the plaintiffs within the United States beyond the nine months' period and thus make it impossible for the plaintiffs to perform. Since, as already noted, the complaint was dismissed at the close of the plaintiffs' case, no opportunity was presented to try this issue of fact.

The judgment appealed from should, therefore, be reversed and a new trial ordered, with costs to the appellants to abide the event.

DOWLING, P. J., McAVOY, MARTIN and O'MALLEY, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellants to abide the event.